**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAIRO FABRICIO-VALDEZ,<br><br>Petitioner,<br><br>v.<br><br>CRAIG A. LOWE, *et al.*,<br><br>Respondents. | No. 4:26-CV-01430<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**OCTOBER 2, 2026**

## I. BACKGROUND

Jairo Fabricio-Valdez is a detainee of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE").[1] Fabricio-Valdez is currently detained at the Pike County Correctional Facility located within the Middle District of Pennsylvania.[2] Fabricio-Valdez, a citizen and native of Belize, entered the United States of America in August of 2023.[3] On May 10, 2026, Fabricio-Valdez was arrested by the Monroe County Police Department for simple assault before being transferred to ICE custody on or around May 13, 2026; he has remained in ICE custody since that date.[4]

---

1 Doc. 1, at 2.
2 *Id*. at 3-4.
3 *Id*. at 2.
4 *Id*.; Doc. 6-2.

Fabricio-Valdez first filed a 28 U.S.C. § 2241 petition seeking release from custody or a bond hearing, asserting that his continued detention without a bond hearing violated his due process rights.[5] The Court granted that motion, ordering Respondents to either release Fabrico-Valdez or provide him with an individualized bond hearing.[6] The Court further instructed that, should Fabricio-Valdez be denied bond, Respondents must file a status report providing a "detailed explanation of the reasons for such denial, beyond simply stating that [Fabricio-Valdez] was found to be a danger or flight risk.[7]

Fabricio-Valdez received a bond hearing on June 22, 2026, before Immigration Judge ("IJ") Corey Combs.[8] At that hearing, Fabricio-Valdez noted that he had received "significant financial support," retained a "stable job," possessed a "fixed residence," and had two potential forms of relief.[9] Fabricio-Valdez also made clear that his underlying assault charge had been dismissed.[10] However, the IJ determined that Fabricio-Valdez had not sufficiently demonstrated that he was neither a danger nor a flight risk.[11] With respect to danger, the IJ explained that the dismissal of Fabricio-Valdez's recent charges was not dispositive.[12] The IJ further

---

5 *See* Doc. 1.
6 Doc. 7; Doc. 8.
7 Doc. 8.
8 Doc. 9, at 1.
9 Doc. 13-4, at 4.
10 *Id*.
11 *Id*. at 5-6.
12 *Id*. at 5.

recognized that although Fabricio-Valdez's counsel tried to explain the circumstances surrounding the altercation, they nevertheless failed to submit any corroborating police reports or documentation.[13] On flight risk, the IJ cited several factors, including the brevity of Fabricio-Valdez's submitted employment letter, the fact that he entered the United States without inspection, and the lack of family ties with the exception of his wife.[14]

Fabricio-Valdez now moves for this Court to enforce its judgment, asserting that the bond hearing was "nominally held" and lacked an "individualized consideration of evidence and a detailed explanation beyond conclusory labels" contrary to the Court's June 10, 2026 Order.[15] In opposition, Respondents argue that 8 U.S.C. § 1226(e) strips the Court of jurisdiction to review the IJ's bond hearing determination and that Fabricio-Valdez failed to exhaust his administrative remedies.[16] Respondents also assert that, regardless, Fabricio-Valdez received an individualized bond hearing in accordance with the Court's Order, and that Fabricio-Valdez essentially seeks to relitigate the merits of the hearing.[17]

Fabricio-Valdez has filed a reply brief, rendering this matter ripe for disposition.[18] For the reasons discussed below, the motion will be denied.

---

[13] *Id.*
[14] *Id.* at 5-6.
[15] Doc. 11, at 3.
[16] Doc. 13, at 6-10.
[17] *Id.* at 10-14.
[18] Doc. 14.

## II. DISCUSSION

### A. Jurisdiction

Title 8 U.S.C. § 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."[19]

Despite that rather definitive language, the United States Court of Appeals for the Third Circuit has explicitly held that "[n]othing in 8 U.S.C. § 1226(e) prevents [courts] from deciding whether the immigration officials had statutory authority to impose mandatory detention" and that "Section 1226(e) does not limit habeas jurisdiction over constitutional claims or questions of law."[20] Stated differently, although courts "lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, [they] may review whether the bond hearing was fundamentally unfair."[21]

Additionally, beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a "court has the inherent power to

---

19 8 U.S.C. § 1126(e).

20 *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (quoting *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011)).

21 *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

enforce its own orders."[22] Courts therefore have "continuing jurisdiction to address alleged noncompliance with [a] conditional writ of habeas corpus."[23]

Here, Fabricio-Valdez asserts that his hearing failed to comply with the Court's order mandating that Fabricio-Valdez receive a bond hearing in line with fundamental notions of due process.[24] These arguments are excepted from § 1226(e)'s bar on review of bond determinations, as the Court is not divested of jurisdiction to consider whether the bond hearing complied with the Court's own order and whether it was fundamentally fair.[25] Therefore, Respondents' jurisdictional arguments fail.

Respondents additionally assert that Fabricio-Valdez has failed to exhaust his administrative remedies related to the bond hearing, and that, therefore, this Court should decline to review the motion.[26] As other courts have discussed, whether an individual must exhaust administrative remedies by appealing a denial of bond is an "area of unsettled law in the Third Circuit and in this District" and "there are several decisions in this district reaching conflicting conclusions about whether exhaustion is required."[27]

---

22 *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020).

23 *Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (citing *Phifer v. Warden,* 53 F.3d 859, 865 (7th Cir. 1995)).

24 Doc. 11.

25 *See Ghanem*, 2022 WL 574624, at *2.

26 Doc. 13, at 7-10.

27 *Shonhai v. Lowe*, No. CV 3:24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026).

The Court need not determine whether exhaustion of administrative remedies is required in this matter because, even when exhaustion is necessary, courts will not enforce that requirement if exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm."[28] As it relates to an appeal of the denial of bond, futility is apparent because "'it is not at all clear that the BIA could evaluate the legality of the IJ's bond determination in relation to [a district court's order]—the BIA has, for example, consistently refused to reach and decide constitutional questions.'"[29]

Additionally, to the extent that Fabricio-Valdez would be required to exhaust administrative remedies, such exhaustion would not apply to this Court's review of its own order when determining if Respondents complied therewith. Accordingly, the Court has jurisdiction to consider Fabricio-Valdez's motion.

### B. Merits

Turning to the merits of the motion, Fabricio-Valdez argues that his bond hearing was deficient and, therefore, did not comply with the Court's prior Order.[30]

---

[28] *Id.* (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)).
[29] *Id.* (quoting *Y.S.G. v. Andrews*, No. 25-cv-1884, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025)).
[30] *See* Doc. 11; Doc. 14.

Respondents assert that the IJ sufficiently considered Fabricio-Valdez's circumstances and that the proceeding was not procedurally deficient.

"Throughout all phases of deportation proceedings, petitioners must be afforded due process of law."[31] The Due Process Clause guarantees individuals "an opportunity to be heard at a meaningful time and in a meaningful manner."[32] "This guarantee comprises three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests."[33] "In other words, petitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf."[34]

"[A] 'decisionmaker must actually consider the evidence and argument that a party presents,' and denies due process when it acts 'as a mere rubber-stamp.'"[35] "A bond hearing is individualized 'if it is not so arbitrary that it would offend fundamental tenets of due process[,'] 'if there is a discernible rational basis for the

31 *Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 213 (3d Cir. 2017).
32 *Id.* (internal quotation marks omitted).
33 *Id.* (brackets and internal quotation marks omitted).
34 *Id.* (internal quotation marks omitted).
35 *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 555 (D.N.J. 2026) (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001), *superseded by statute on other grounds*).

underlying administrative decision, and [if] the immigration judge applies the correct legal standards.'"[36]

For a bond hearing to be fundamentally fair, any evidence relied upon by an IJ "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community."[37] "'Mechanistic reliance on factors that are common to all § 1226([a]) detainees will not suffice.'"[38] The Board of Immigration Appeals ("BIA") has enumerated proper and relevant considerations for an IJ to use when determining whether a noncitizen is a danger to the community or a risk of flight, including, *inter alia*, whether the alien has a fixed address in the United States, the alien's family ties in the United States, and the alien's employment history.[39]

---

[36] *Id.* at 555 (quoting *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026)).

[37] *Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

[38] *Id.* (quoting *Wilkins v. Doll*, No. 1:17-CV-2354, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018)).

[39] *Castillo Reyes v. Rose*, 820 F. Supp. 3d 343, 352 n.7 (E.D. Pa. 2026). Specifically, these considerations are known as the *Guerra* factors, which the Ninth Circuit has held are probative of danger to the community or risk of flight. *See Martinez v. Clark*, 124 F. 4th 775, 786 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The *Guerra* factors an IJ may consider include "any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *Id.* Courts in this circuit have begun to recognize that such factors are proper considerations in determining dangerousness and risk of flight. *See, e.g., Castillo Reyes*, 820 F. Supp. 3d at 352 n.7; *Avilov v. McShane*, No. 26-2431, 2026 WL 1947617, at *2 (E.D. Pa. July 6, 2026); *Nasimov v.*

Here, the IJ's determination that Fabricio-Valdez did not meet his burden to show that he was not a danger to the community was deficient. However, the IJ's determination regarding Fabricio-Valdez's potential flight risk was not so deficient as to contravene the Court's prior Order. The submitted transcript of the proceeding indicates that the IJ received evidence and heard argument on Fabricio-Valdez's behalf.[40] After doing so, the IJ explicitly noted the *Guerra* factors, which governed his analysis.[41] Fabricio-Valdez challenges both of the IJ's determinations. The Court assesses these arguments in turn.

**1. Risk of Danger to the Community**

The IJ may properly consider charges "even after criminal charges are dismissed."[42] Indeed, "[d]istrict courts have found that dismissed charges 'are deemed relevant evidence regarding a determination of the potential danger [the petitioner] poses to the community.'"[43] Furthermore, in a bond hearing "under § 1226(a)[,] the burden remains on the detainee at all times."[44] But the IJ is still

---

*Jamison*, No. 25-7420, 2026 WL 94615, at *6 n.10 (E.D. Pa. Jan. 13, 2026); *Bueno v. O'Neill*, No. 26-304, 2026 WL 413315, at *7 n.11 (E.D. Pa. Feb. 13, 2026); *Dia v. Mullin*, No. 4:26-CV-01418, 2026 WL 1708513, at *5 n.54 (M.D. Pa. June 12, 2026) (Brann, J.).

40 Doc. 13-4, at 3-4.

41 *Id*. at 5.

42 *Vig v. Albarran*, 1:26-cv-1252, 2026 WL 1346686, at *3-4 (E.D. Ca. May 14, 2026).

43 *Id*. at *4 (citing *Flores-Delgado v. Lynch*, No. 15-cv-1273, 2016 WL 2865872, at *7 (D. Ariz. May 17, 2016)).

44 *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018).

obligated to provide an individualized consideration supported by legitimate evidence.[45]

Here, the hearing was constitutionally deficient because the IJ did not sufficiently engage with Fabricio-Valdez's circumstances to render an individualized determination of danger. The only relevant issue presented was Fabricio-Valdez's prior criminal charges, absent any context or explanation such as charging documents or affidavits, that had since been dismissed.[46] In response, Fabricio-Valdez contended that the charge was a "misunderstanding" and a "verbal altercation."[47] However, the IJ held that Fabricio-Valdez could not meet his burden in the absence of further evidence—even though Respondents provided no additional information to suggest that the charges were well-founded.[48]

While dismissed charges may sometimes be relevant when determining bond, the Court finds that, in this case, the IJ's complete reliance on Fabricio-Valdez's dismissed charges was procedurally insufficient. "Continued detention resting solely on an arrest never tested 'following the full procedural protections our criminal justice system offers' lacks the neutral fact-finding that due process requires."[49] To hold that this determination was procedurally proper would be to endorse a *per se*

---

45 *Lowe*, 2020 WL 4530728, at *3 (quoting *German Santos*, 965 F.3d at 214).

46 Doc. 13-4, at 5.

47 *Id.*

48 *Id.*

49 *Cesvette v. Moniz*, No. 26-CV-12662, 2026 WL 2494666, at *3 (D. Mass Aug. 25, 2026) (quoting *Doe v. Moniz*, 800 F. Supp. 3d 203, 216 (D. Mass. 2025)).

rule that any prior charges, even when dismissed and where no additional evidence of their foundation is presented by the Government, may alone bar a noncitizen from bond. Such a holding would be in direct contravention of the guarantee that all detainees receive an individualized determination supported by a record.[50] Therefore, as the IJ failed to make an individualized determination considering sufficient facets of the relevant circumstances, the hearing did not provide Fabricio-Valdez with due process.

### 2. Flight Risk

However, the IJ also found that Fabricio-Valdez did not sufficiently prove that he was not a flight risk. In his analysis, the IJ cited the short length of a letter submitted by Fabricio-Valdez's employer that failed to mention whether Fabricio-Valdez would continue to be employed. The IJ also noted that Fabricio-Valdez, except for his spouse, was unable to cite to any other family ties in the United States. Additional factors weighing against Fabricio-Valdez included his undocumented entry into the United States and the short duration of his residency in the United States. However, the IJ did acknowledge certain factors that weighed in favor of Fabricio-Valdez: his pending application for relief and documents submitted by his Lawful Permanent Resident (LPR) sponsor. After enumerating the issues that advised towards and against Fabricio-Valdez, the IJ "balance[d] all the factors and

---

[50] *See Serrano-Alberto*, 859 F.3d at 213; *Mujica-Marquez v. Hoover*, No. 4:26-CV-623, 2026 WL 1483740, at *5 (M.D. Pa. May 27, 2026).

the totality of the circumstances" to determine that Fabricio-Valdez failed to meet his burden to prove he was not a flight risk. [51]

While Fabricio-Valdez's undocumented entry into the United States does not support the determination that he was a flight risk because it is a "'factor[ ] that [is] common to all § 1226[(a)] detainees,'"[52] the Court recognizes that the IJ did consider "facially valid" factors for risk of flight. After the IJ noted that his analysis was governed by the *Guerra* factors,[53] the IJ cited Fabricio-Valdez's limited employment history documentation and lack of family ties in the United States as justifying his determination.[54] The IJ also referenced and developed the record on several factors favorable to Fabricio-Valdez, including pending applications for relief and bills showing a fixed address.[55] Finally, while Fabricio-Valdez's three-year residency in

---

[51] Doc. 13-4, at 5.

[52] *See Mujica-Marquez v. Hoover*, 4:26-CV-00623, 2026 WL 1483740, at *4 (M.D. Pa. May 27, 2026) (Brann, J.) (quoting *Lowe*, 2020 WL 4530728, at *3). The court in *Santos* found similarly that the existence of a removal order is a "'mechanistic factor' common to virtually all immigration detainees" and that such a consideration could not alone support a finding of risk of flight. *Santos*, 2020 WL 4530728, at *4.

[53] Doc. 13-4, at 5. To be clear, simply mentioning *Guerra* does not, on its own, indicate that an IJ conducted an individualized analysis. So too for the straightforward statement that an IJ is "balancing the factors" or assessing the "totality of the circumstances." The Court reviews the analysis itself, not the IJ's conclusory labels.

[54] *Id*. at 5-6. While *Guerra* refers to employment history more generally, courts have accepted as relevant evidence that the same employer would continue to employ a petitioner following release. *See Recinos Acosta v. Warden Northwest Det. Center*, 2:26-cv-01286, 2026 WL 1481474, at *4 (W.D. Wa. May 27, 2026) (recognizing an employer's declaration that "[p]etitioner would have a job waiting for him" as relevant in an individualized custody analysis); *Kamara v. Doll*, 1:17-CV-01176, 2017 WL 6497362, at *4 (M.D. Pa. Dec. 19, 2017) (upholding the IJ's determination but recognizing an employer's offer of "employment upon release from ICE custody" as relevant in an individualized custody analysis).

[55] *Id.* at 2-3.

the United States would be insufficient to justify the IJ's determination on its own, it is a valid additional factor that supports the IJ's conclusion.[56] Therefore, the IJ appeared to weigh the evidence submitted and come to an individualized determination in compliance with the Court's prior Order.

Moreover, the proceeding was fundamentally fair. Fabricio-Valdez was represented by counsel who presented evidence and argument that the IJ appeared to consider in its determination.[57] Furthermore, Fabricio-Valdez does not assert, nor does the Court find independently, that the IJ applied incorrect legal standards to the situation. As such, this hearing was not so procedurally deficient as to be fundamentally unfair.

This is a close case; while the Court may disagree with the IJ's ultimate determination that Fabricio-Valdez had not met his burden of proof, such is not the question before the Court today.[58] To the extent that Fabricio-Valdez asserts that the IJ's determination is contrary to the submitted evidence, it is well established that "this Court lacks the authority to 'reweigh the evidence' presented at the bond

---

[56] *Guerra*, 24 I. & N. Dec., at 40; *United States v. Mejias-Mejias*, 771 F. Supp. 3d 688, 693 (D. Md. 2025) (noting that there is limited, if any, authority to suggest "that a brief residency, with less established ties to the community, is dispositive. Therefore, this [factor] must be weighed in the context of other considerations.").

[57] *Id.*

[58] *Ghanem*, 2022 WL 574624, at *3 ("[J]ust because there are disagreements about the outcome of the bond hearing . . . does not mean that the IJ violated due process in conducting the bond hearing.").

hearing."[59] Instead, for the instant motion, the Court may only determine whether Fabricio-Valdez received a sufficiently individualized bond hearing to comply with the Court's prior Order and fundamental notions of fairness. Having so found that the IJ's flight risk assessment was individualized to Fabricio-Valdez's submissions and was not fundamentally unfair, Fabricio-Valdez's motion to enforce the judgment is denied.

## III. CONCLUSION

Fabricio-Valdez's motion to enforce the Court's June 10, 2026 Order is denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[59] *Collado Nunez v. Oddo*, No. 25-CV-143J, 2026 WL 1170973, at *9 (W.D. Pa. Apr. 30, 2026) (quoting *Ghanem*, 2022 WL 574624, at *2, 3.).